# United States Court of Appeals

## for the Federal Circuit

**Arthrex, Inc.,**

*Appellant*

v.

**Smith & Nephew, Inc. and ArthroCare Corp.,**

*Appellees*

**United States,**

*Intervenor*

Appeal from the U.S. Patent & Trademark Office,
Patent Trial and Appeal Board, *Inter Partes* Review No. 2017-00275

## PATENT OWNER ARTHREX, INC.'S PETITION FOR REHEARING AND REHEARING EN BANC

Jeffrey A. Lamken
Robert K. Kry
MOLOLAMKEN LLP
600 New Hampshire Ave. NW
Washington, D.C.
Telephone: (202) 556-2010
Facsimile: (202) 556-2001
jlamken@mololamken.com
rkry@mololamken.com

Jordan Rice
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 450-6709
jrice@mololamken.com

Anthony P. Cho
David Gaskey
Jessica Fleetham
David L. Atallah
CARLSON, GASKEY & OLDS, P.C.
400 West Maple Road, Suite 350
Birmingham, MI 48009
Telephone: (248) 988-8360
Facsimile: (248) 988-8363
acho@cgolaw.com
dgaskey@cgolaw.com
jfleetham@cgolaw.com
datallah@cgolaw.com

*Attorneys for Appellant, Arthrex, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 18-2140

**Short Case Caption** Arthrex, Inc. v. Smith & Nephew, Inc.

**Filing Party/Entity** Arthrex, Inc.

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/11/2022

Signature: /Anthony P. Cho/

Name: Anthony P. Cho

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Arthrex, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Timothy J. Murphy | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

STATEMENT OF COUNSEL ................................................................1

POINTS OF LAW AND FACT OVERLOOKED OR MISAPPREHENDED BY THE PANEL BELOW ...........................................................................2

I. INTRODUCTION AND STATEMENT OF THE CASE ......................................3

II. ANALYSIS.........................................................................................5

  A. THE PANEL'S FVRA RULING WARRANTS EN BANC REVIEW......... 5

  B. THE PANEL'S DECISION CONFLICTS WITH THE EXPLICIT LANGUAGE OF 35 U.S.C. § 311(B) AND THIS COURT'S PRECEDENT ......................................................................................... 10

    1. The Court Should Consider the Substance of a Ground Over its Form .....10

    2. The Correct Construction of 35 U.S.C. § 311(b) Prohibits the Board From Finding Claims Unpatentable Based on §112 ....................................................12

    3. The Panel's Decision Conflicts with This Court's Precedent .................. 16

III. CONCLUSION ...............................................................................17

CERTIFICATE OF COMPLIANCE WITH RULE 32 AND 35.............................18

CERTIFICATE OF SERVICE ...............................................................19

# TABLE OF AUTHORITIES

**Cases**

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980) ............................................................................12

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) .............................................................................8

*Fedorenko v. United States*,
  449 U.S. 490 (1981) ...........................................................................15

*In re NTP, Inc.*,
  654 F.3d 1268 (Fed. Cir. 2011) ..........................................................14

*King v. St. Vincent's Hosp.*,
  502 U.S. 215 (1991) .............................................................................8

*L.M.-M. v. Cuccinelli*,
  442 F. Supp. 3d 1 (D.D.C. 2020) .........................................................8

*McCarthy v. MSPB*,
  809 F.3d 1365 (Fed. Cir. 2016) ..........................................................11

*O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*,
  955 F.3d 990, 993 (Fed. Cir. 2020) ....................................................12

*Rambus Inc. v. Rea*,
  731 F.3d 1248 (Fed. Cir. 2013) ..........................................................10

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) ...................................................................... 13, 15

*Salinas v. United States*,
  522 U.S. 52 (1997) .............................................................................16

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
  948 F.3d 1342 (Fed. Cir. 2020) ..................................................... 16, 17

*Sarif Biomedical LLC v. Brainlab, Inc.*,
  725 Fed. Appx. 996 (Fed. Cir. 2018) ................................................ 16, 17

*Schaghticoke Tribal Nation v. Kempthorne*,
  587 F.3d 132 (2d Cir. 2009) .................................................................8

*United States v. Arthrex, Inc.*,
  141 S. Ct. 1970 (2021) .........................................................................9

**Statutes**

5 U.S.C. § 3347(a) ................................................................... 3, 6, 8
5 U.S.C. § 3348(a)(2)(A) ..............................................................6, 9
35 U.S.C. § 6(c) ..............................................................................9
35 U.S.C. § 311(b) .....................................................................4, 13
35 U.S.C. § 314(a) ........................................................................14
35 U.S.C. § 315(e) ........................................................................14
35 U.S.C. § 321(b) .....................................................................4, 13
35 U.S.C. § 324(a) ........................................................................14
35 U.S.C. § 325(e)........................................................................14

**Other Authorities**

Agency Organization Order 45-1 § II.D ..................................6, 9

Michele C. Bosch *et al.*, *Double the Trouble: Lack of Priority Opens the Door to Unpatentability in an IPR Proceeding* (July 11, 2019), available at https://www.finnegan.com/en/insights/blogs/prosecution-first/double-the-trouble-lack-of-priority-opens-the-door-to-unpatentability-in-an-ipr-proceeding.html ....12

Morton Rosenberg, Cong. Rsch. Serv., *The New Vacancies Act: Congress Acts To Protect the Senate's Confirmation Prerogative* 9 (Nov. 2, 1998)..........................8

S. Rep. No. 105-250 (1998) ......................................................7

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe this appeal requires answers to the following precedent-setting questions of exceptional importance:

- Whether the Patent and Trademark Office's delegation of authority to Commissioner Hirshfeld to review final decisions of the Patent Trial and Appeal Board during a vacancy in the Director's office violates the Federal Vacancies Reform Act.

- Whether 35 U.S.C. § 311(b)'s restriction "only on a ground that could be raised under section 102 or 103" permits IPR challenges that depend solely on compliance with the written description requirement of section 112.

Dated: July 11, 2022        /s/ Anthony P. Cho
                            Anthony P. Cho
                            Attorney of Record for Appellant Arthrex, Inc.

## POINTS OF LAW AND FACT OVERLOOKED OR MISAPPREHENDED BY THE PANEL BELOW

The following points of law and fact were overlooked or misapprehended by the panel below:

1. The panel incorrectly construed 5 U.S.C. §3348(a)(2)(A) to authorize the Patent and Trademark Office to delegate the Director's authority to Commissioner Hirshfeld in the event of a vacancy, notwithstanding 5 U.S.C. §3347(a)'s mandate that the Federal Vacancies Reform Act is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a vacant principal office.

2. The Federal Circuit panel improperly construed the language "only on a ground that could be raised under section 102 or 103" as required by 35 U.S.C. § 311(b) to permit challenges that depend solely on the basis of the written description requirement of section 112.

3. The panel's decision is further in conflict with this Court's prior decisions in *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342 (Fed. Cir. 2020) and *Sarif Biomedical LLC v. Brainlab, Inc.*, 725 Fed. Appx. 996 (Fed. Cir. 2018) (nonprecedential), both of which found that the Board lacks the authority to find unpatentable patent claims for failure to comply with 35 U.S.C. § 112 in an *inter partes* review.

# COMBINED PETITION FOR REHEARING AND REHEARING EN BANC

## I.      INTRODUCTION AND STATEMENT OF THE CASE

The Supreme Court remanded this case so Arthrex could seek review of the Patent Trial and Appeal Board's decision by a principal officer appointed by the President and confirmed by the Senate. On remand, Arthrex never received that principal officer review. Instead, Arthrex's petition was denied by Commissioner Hirshfeld, who purported to exercise the Director's functions during a vacancy in the office.

That action presents an exceptionally important question concerning the scope of the Federal Vacancies Reform Act. The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a vacant principal office. 5 U.S.C. § 3347(a). Despite that provision, the panel held that the Patent and Trademark Office could authorize Commissioner Hirshfeld to perform all the Director's functions during a vacancy simply by promulgating a delegation of authority to that effect.

The panel acknowledged that its interpretation "renders the FVRA's scope 'vanishingly small.'" Op. at 12. The panel "f[ou]nd it disquieting that the government views the FVRA as impacting such a 'very small subset of duties' and not impacting the PTO at all." *Id.* at 13. But the panel adopted the government's interpretation nonetheless. The panel construed the FVRA in a way that drains the

statute of virtually all practical effect and defies clear congressional intent. That decision presents a question of exceptional importance that warrants en banc review.

Turning next to the issue of the scope of *inter partes* review ("IPR"), when an applicant applies for a patent, the application is examined for compliance with four sections of the Patent Act: 35 U.S.C. §101 (patent eligibility), §102 (anticipation), §103 (obviousness), and §112 (written description and enablement). Under the America Invents Act ("AIA"), Congress set up a statutory framework for petitioners to challenge compliance with all four sections in Post-Grant Review ("PGR") but expressly limited the types of challenges in an *Inter Partes* Review ("IPR") **"only"** to §§ 102 and 103 grounds. 35 U.S.C. §§ 311(b), 321(b). While PGRs allow a broader range of challenges, they concomitantly require the petitioner to meet a higher threshold of proof for institution and can lead to broader estoppel for future challenges by the petitioner as compared to IPRs.

In this case, Petitioners Smith & Nephew, Inc. and ArthroCare Corp. (together, "S&N") avoided the higher threshold of proof and broad estoppel accompanying a PGR by stylizing their §112 written description challenge as §102 grounds and then filing this challenge as an IPR. In truth, the entire basis for their petition was §112. For a ground under §§ 102 or 103, a petitioner must identify prior art patents or printed publications that pre-date the effective filing date of the challenged patent. However, S&N did not rely on any such prior art in its Petition

for IPR. Instead, S&N argued that the inventors of the '907 Patent did not have possession of the claimed invention throughout its priority chain under the written description requirement of §112. According to S&N, the publication of the earliest patent application in the priority chain of the '907 Patent thereby became prior art.

The Board determined that the '907 Patent was not entitled to its priority claim and ultimately found the challenged claims of the '907 Patent to be unpatentable solely on the basis of this written description challenge. The panel affirmed the Board's decision.

In so doing, the panel made two mistakes. First, it incorrectly interpreted §311(b) by reading out the word "only." Second, the panel relied on *In re NTP* to support its view that §112 could form the basis for an IPR challenge despite the express restriction of IPRs to "only" sections 102 and 103 grounds, which is not present in the statute at issue in *NTP*. This result is in conflict with 35 U.S.C. § 311(b) and the Court's precedent.

## II.    ANALYSIS

### A. THE PANEL'S FVRA RULING WARRANTS EN BANC REVIEW

The Court's ruling on the Federal Vacancies Reform Act warrants en banc review. The Court's construction drains the statute of all practical effect and thwarts Congress's basic objectives in enacting the legislation. Nothing in the statute compels or even supports the panel's interpretation.

The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a vacant principal office. 5 U.S.C. § 3347(a). The statute provides three options for an acting officer: (1) the "first assistant" to the office; (2) another principal officer if the President so directs; or (3) another high-level officer or employee in the agency if the President so directs. *Id.* § 3345(a)(1)-(3). Commissioner Hirshfeld was none of those things. Rather, the PTO unilaterally selected Commissioner Hirshfeld to stand in for the Director by delegating all of the Director's powers to him in the event of a vacancy. Agency Organization Order 45-1 § II.D (ECF No. 161-2). The agency thus created its own succession plan that differs from the three options Congress set forth.

The panel held that this delegation did not run afoul of the FVRA because the statute defines "function or duty" to include only functions or duties "required by statute to be performed by the officer *(and only that officer)*." 5 U.S.C. § 3348(a)(2)(A) (emphasis added). In the panel's view, because the PTO Director— like all agency heads—can delegate responsibilities to subordinates, *none* of his responsibilities is required to be performed by "only that officer," and therefore *none* of his responsibilities is a "function of duty" subject to the FVRA. Op. at 15-17.

That holding creates a giant loophole in the statute that renders it all but irrelevant. The panel admitted as much. It acknowledged that its interpretation "renders the FVRA's scope 'vanishingly small.'" Op. at 12. "Most, and in many

cases all, the responsibilities performed by a [principal] officer will not be exclusive." *Id.* (quoting *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 72 (1999)). The government agreed with that assessment: Across the entire federal bureaucracy, "only 'a very small subset of duties' are non-delegable." *Id.* (quoting government's argument). And in the government's view, "the FVRA imposes **no constraints whatsoever** on the PTO because **all** the Director's duties are delegable." *Id.* (emphasis added). The panel understandably "f[ou]nd it disquieting that the government views the FVRA as impacting such a 'very small subset of duties' and not impacting the PTO at all." *Id.* at 13.

The panel was right to be "disquiet[ed]." The panel's interpretation thwarts Congress's basic objectives in enacting the statute. Before the FVRA, the Justice Department had taken the view that, "where a department's organic act vests the powers and functions of the department in its head and authorizes that officer to delegate such powers and functions to subordinate officials or employees as she sees fit, such authority supersedes the Vacancies Act's restrictions on temporarily filling vacant advice and consent positions." S. Rep. No. 105-250, at 3 (1998). Congress considered that theory "wholly lacking in logic, history, or language" and thought it "undermined" the Senate's confirmation power. *Id.* at 3, 5. Congress enacted the FVRA to "foreclose[ ]" the Justice Department's position. *Id.* at 17; *see also* Morton Rosenberg, Cong. Rsch. Serv., *The New Vacancies Act: Congress Acts To Protect*

7

*the Senate's Confirmation Prerogative* 9 (Nov. 2, 1998) (statute "expressly negates the DOJ position"); *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 34 (D.D.C. 2020).

The panel's decision now authorizes precisely the practice Congress sought to prohibit. Virtually ***all*** agencies have general delegation authority, and virtually all functions are subject to that authority. The panel's decision thus allows every agency in the federal government to make up its own succession plan, without regard to the three statutory options, simply by delegating the agency head's authority to its preferred successor. That holding thwarts Congress's intent to prescribe the "***exclusive means*** for temporarily authorizing an acting official to perform the functions and duties" of a vacant office. 5 U.S.C. § 3347(a) (emphasis added).

Nothing in the statute compels or even supports the panel's holding. It is a "cardinal rule" of statutory interpretation that "a statute is to be read as a whole." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). A court must "fit, if possible, all parts [of a statute] into an harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Here, the panel improperly construed Section 3348 in a way that drained Section 3347's "exclusive means" provision of all practical force.

This is not a case like *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132 (2d Cir. 2009), in which Congress specifically vested authority over a function in more than one officer. *See id.* at 135 (relevant provision stated that decision could

"be made *either* by the 'Assistant Secretary—Indian Affairs' *or* by his or her 'authorized representative'"). Nor is it a case where Congress vested a function in an officer who then delegated authority over that particular function to another officer in the ordinary course of his duties. Rather, the PTO's delegation order transfers *all* of the Director's functions to Commissioner Hirshfeld *only* when there is a vacancy in the office. Agency Organization Order 45-1 § II.D (ECF No. 161-2). In those circumstances, the agency is clearly using its delegation authority to craft a substitute succession plan, contrary to Section 3347's directive that the FVRA is the "exclusive means" for authorizing temporary appointments.

In any case, the Director's power to singlehandedly review Board decisions in inter partes reviews is a function "required by statute to be performed by the officer (and only that officer)" even under the panel's interpretation. 5 U.S.C. § 3348(a)(2)(A). Under the Patent Act, "[o]nly the Patent Trial and Appeal Board may grant rehearings," and the Board must act in panels of "at least 3 members." 35 U.S.C. § 6(c). The Supreme Court declared those restrictions unenforceable *only* as applied to the Director: "Section 6(c) cannot constitutionally be enforced to the extent that its requirements prevent *the Director* from reviewing final decisions rendered by APJs." *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1987 (2021) (emphasis added). For that reason too, the panel's ruling conflicts with the statute.

Finally, since Commissioner Hirshfeld denied review in this case, the Senate confirmed Katherine Vidal as PTO Director. ECF No. 192 ¶5. The government moved for a remand so the new Director could review the Board's decision, and neither Arthrex nor Smith & Nephew opposed that motion. *Id.* ¶¶6, 10. On remand, the Director would not have been restricted by the substantial evidence standard that governs this Court's review, so the Director's decision could well have been different from what this Court decided. *See Rambus Inc. v. Rea*, 731 F.3d 1248, 1251-52 (Fed. Cir. 2013) (discussing substantial evidence standard). The panel denied the government's motion anyway. ECF No. 195. The fact that the government ***already consented*** to the relief that Arthrex seeks is yet another reason why the panel's decision warrants review.

By its own admission, the panel's decision "renders the FVRA's scope 'vanishingly small.'" Op. at 12. Because the panel has decided an important question of federal law in a way that disregards clear congressional intent, its decision warrants en banc review.

## B. THE PANEL'S DECISION CONFLICTS WITH THE EXPLICIT LANGUAGE OF 35 U.S.C. § 311(B) AND THIS COURT'S PRECEDENT

### 1. *The Court Should Consider the Substance of a Ground Over its Form*

In recognition of the plain language of 35 U.S.C. §311(b), S&N styled its grounds of unpatentability as an anticipation ground under §102. However, the entire

challenge rests on the written description requirement of §112 and necessarily falls beyond the scope of an IPR. S&N asked the Board to find claims of the '907 Patent unpatentable because the '907 Patent was not entitled to its effective filing date, opening up years of additional references that could be used as prior art, including the '907 Patent's own priority chain. This priority analysis has nothing to do with anticipation and everything to do with issues of written description that arise under §112, which the Board and the panel even acknowledged. Appx15-16 ("the priority dispute is circumscribed to a single issue: it focuses solely on [a limitation of the challenged claims] and solely on the written description requirement of 35 U.S.C. § 112"); Op. at 26 ("the Board needed to determine whether the [parent] application satisfied the written description requirement").[1] The panel's conclusion that "S&N complied with §311(b) by asserting invalidity grounds under § 102" cannot be reconciled with this fact. Op. at 26.

One must look beyond the form of S&N's ground and reach its substance—which is outside the statutory scope of IPR. *McCarthy v. MSPB*, 809 F.3d 1365, 1370 (Fed. Cir. 2016) (considering form over substance of decision made by agency in determining that the decision was a reviewable final order under the relevant

---

[1] The panel incorrectly found that the Board needed to perform the priority analysis because Arthrex argued that the parent patent was not prior art. In reality, S&N's petition asked the Board to perform the priority analysis, and Arthrex argued that the parent patent was not prior art in response to S&N's petition. Appx74-100.

statutes); *O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 993 (Fed. Cir. 2020) (acknowledging that substance should be prioritized over form in prevailing party analysis for award of attorney's fees). Prioritizing the form of the ground as the panel did leaves open all continuation and continuation-in-part applications vulnerable to the same sort of attack in an IPR, without subjecting petitioners to the higher threshold of proof and broader estoppel provisions for PGRs that were intended by Congress. *See, e.g.*, Michele C. Bosch *et al*., *Double the Trouble: Lack of Priority Opens the Door to Unpatentability in an IPR Proceeding* (July 11, 2019), available at https://www.finnegan.com/en/insights/blogs/prosecution-first/double-the-trouble-lack-of-priority-opens-the-door-to-unpatentability-in-an-ipr-proceeding.html. Any petitioner wishing to avoid a patent that happens to be a continuation or continuation-in-part need not even find prior art that pre-dates the effective filing date of the patent but may instead rely on a published application in the patent's priority chain as prior art (as S&N did here).

2. *The Correct Construction of 35 U.S.C. § 311(b) Prohibits the Board From Finding Claims Unpatentable Based on §112*

For questions of statutory construction, the Court must begin with the language of the statute at hand. *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). . "Unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Id*. (internal quotation marks and citations

omitted). In this case, the relevant statute provides that an IPR is available "**only** on a ground that could be raised under section 102 or 103." 35 U.S.C. §311(b) (**emphasis added**). The operative word is "only," and there is no alternative definition in the Patent Act. The meaning is clear: the Board cannot find claims of a patent to be unpatentable on grounds other than those arising under §§ 102 or 103.

The panel's decision does not apply the plain meaning of "only" and indeed can only be interpreted as reading the word "only" out of the statute entirely. Under the panel's decision, IPR is not limited to "only" grounds under §§ 102 and 103 but is expanded to cover §112. This cannot be the correct result. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used.").

Moreover, it is evident from the statutory scheme that Congress knew patents could be challenged in ways other than grounds under §§ 102 and 103, yet deliberately excluded those other ways from IPR. There is another type of proceeding, post-grant review (PGR), created contemporaneously with IPR, that allows the Board to consider §112 challenges, which would include priority issues. 35 U.S.C. §321(b); *see also* Arthrex's Opening Brief at 56-57. For these fact-intensive issues, Congress both limited the time period for when such challenges could be raised and increased the threshold of proof that must be met by petitioners to have a PGR instituted (as compared to an IPR). 35 U.S.C. §314(a) (Director may

institute IPR when there is a "reasonable likelihood that the petitioner would prevail"); *compare* §324(a) (Director may institute PGR when "it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable"). PGRs also carry a broader scope of estoppel than IPRs because of the broader range of challenges available. 35 U.S.C. §315(e); *compare* §325(e).

The panel overlooked this statutory design, thereby enabling challenges under §112 in an IPR without the burden of proof and estoppel imposed by PGR. This decision leaves open the door to priority challenges for every single patent that has an intervening publication, whether a continuation-in-part or a continuation. Why would petitioners file a PGR challenging written description with its added burdens and estoppel provisions when they can file an IPR challenging priority and enjoy a lower burden of proof and a more limited estoppel?

The panel's reliance on *In re NTP, Inc.*, 654 F.3d 1268 (Fed. Cir. 2011), a case holding that §112 may be examined to determine priority under the reexamination statute, is misplaced. Op. at 26. Conspicuously missing from the reexamination statute is the restriction to "only" §§ 102 and 103 grounds present in 35 U.S.C. § 311(b). The reexamination statute is broader by virtue of the exclusion of that word. Op. at n. 8 (citing 35 U.S.C. §§ 301, 302). Again, the panel cannot simply ignore Congress' express statutory limitation. *Reiter*, 442 U.S. at 339. This

Court's analysis of the reexamination statute in *NTP* is therefore inapplicable to §311(b).

The Government contends that the language "only on the basis of prior art consisting of patents or printed publications" in §311(b) supports §112 review in an IPR. Government's Opening Brief at 16. According to the Government, to determine whether a patent or printed publication is prior art, a patent application claiming priority must necessarily be examined under 35 U.S.C. §120, which requires compliance with §112(a). *Id*. (citing 35 U.S.C. §120). Thus, by implication, §112 can form the basis of an IPR challenge. *Id*. Even if the government were correct that such an implication could be drawn from the statutory language, it cannot override the express limitation of "only" on §§ 102 or 103. *Fedorenko v. United States*, 449 U.S. 490, 513 (1981) (rejecting construction of a statute that introduced a "voluntariness" aspect because it contravened its plain language and because "Congress was perfectly capable of adopting a 'voluntariness' limitation where it felt that one was necessary") (citing *Detroit Trust Co. v. The Thomas Barlum*, 293 U.S. 21, 38 (1934) ("We are not at liberty to imply a condition which is opposed to the explicit terms of the statute. . . . To [so] hold . . . is not to construe the Act but to amend it.")).

Nor should any implication override the statutory framework created by Congress, which directed §112 challenges to PGRs with their accompanying

statutory obligations and limitations. *Id*.; *see also Salinas v. United States*, 522 U.S. 52, 58 (1997) (rejecting construction that "cannot stand" when viewed in light of the statutory framework).

Reasons of practicality do not support ignoring Congress' intention. If there is a question of priority, parties can still raise this challenge in a PGR or in an Article III court.

### 3. The Panel's Decision Conflicts with This Court's Precedent

Aside from the incorrect construction of §311(b), the panel's decision conflicts with the decisions of other panels in *Sarif Biomedical LLC v. Brainlab, Inc.*, 725 Fed. Appx. 996 (Fed. Cir. 2018) and *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342 (Fed. Cir. 2020).[2] Both panels determined that the Board acts outside its statutory limits if it institutes an IPR where §112 issues arise during claim construction (there, "indefiniteness") that would require cancellation of the challenged claims. *Samsung*, 948 F.3d at 1350 (citing *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2141-42 (2016), which notes that the Patent Office would be acting "outside its statutory limits" by "canceling a patent claim for 'indefiniteness under § 112' in inter partes review")); *Sarif*, 725 Fed. Appx. at 1000.

---

[2] *Sarif* is a nonprecedential decision that Arthrex brought to the Court's attention in its Opening Brief. Arthrex's Opening Brief at 55-56. The panel did not address *Sarif* in its Opinion. The Court decided *Samsung* two years later, while this Court and the Supreme Court were considering other issues in this case. *Samsung* is a precedential decision that addresses the same issue as *Sarif*.

This case is no different from *Samsung* and *Sarif*. Each of these cases involved a §112 issue arising during the course of an IPR. In *Samsung* and *Sarif*, the issue arose during claim construction, while here, the issue arose in determining priority. Yet, previous panels found it was proper for the Board to decline the dispositive issue of §112 in *Samsung* and *Sarif* for claim construction analysis while the panel in this case found it was permissible for the Board to proceed on the dispositive issue of §112 for priority analysis.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Arthrex requests this Court grant its Petition for Rehearing and/or Rehearing *En Banc*.

CARLSON, GASKEY & OLDS, P.C.

Dated: July 11, 2022                /s/ Anthony P. Cho
                                    Anthony P. Cho
                                    CARLSON, GASKEY & OLDS, P.C.
                                    *Attorneys for Appellant, Arthrex, Inc.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32 AND 35

I, Anthony P. Cho, counsel for Appellant, certify that the foregoing Brief complies with the type-volume limitation set forth in Fed. R. App. P. 35(b)(2).

Specifically, this Brief contains 3,765 words (excluding the parts of the Brief exempted by Fed. Cir. R. 32(b)(2)) as determined by the word count feature of the word processing program used to create this brief.

I further certify that the foregoing brief complies with the paper, typeface, and type style requirements set forth in Fed. R. App. P. 32(a)(4)-(6) Specifically, this brief has been prepared using a proportionally spaced typeface using Microsoft Word 2020, in 14-point Times New Roman font.

CARLSON, GASKEY & OLDS, P.C.

Dated: July 11, 2022        /s/ Anthony P. Cho
                             Anthony P. Cho
                             CARLSON, GASKEY & OLDS, P.C.
                             *Attorneys for Appellant, Arthrex, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, I electronically filed the foregoing document using the Court's CM/ECF system, which sent notification of such filing to all counsel of record as follows:

Charles T. Steenburg
Michael N. Rader
Nathan R. Speed
Richard F. Giunta
Turhan F. Sarwar
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210

Mark J. Gorman
Smith & Nephew, Inc.
7135 Goodlett Farms Parkway
Cordova, TN 38013

Joshua March Salzman
Brian M. Boynton
Katherine Twomey Allen
Scott R. McIntosh
Courtney Dixon
Joseph H. Hunt
Department of Justice, Civil Division

Thomas W. Krause, Solicitor
Farheena Y. Rasheed, Deputy Solicitor
Sarah E. Craven, Associate Solicitor
Molly R. Silfen, Associate Solicitor
Daniel Kazhdan, Attorney
United States Patent and Trademark Office

Charles R. Macedo
David P. Goldberg
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016

Robert Joseph Rando, Esq.
The Rando Law Firm P.C.
6800 Jericho Turnpike, Suite 120W
Syosset, NY 11791

Ksenia Takhistova
Hunton Andrews Kurth LLP
200 Park Avenue
New York, NY 10166

Matthew S. Hellman
Yusuf Esat
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654

Jeffrey Francer
The Association for Accessible Medicines
Suite 850 601 New Jersey Avenue, NW
Washington, DC 20001


Dated: July 11, 2022                    /s/ Jessica Fleetham
                                        Jessica Fleetham

.

# ADDENDUM

# 𝕌nited 𝕊tates 𝕮ourt of 𝔄ppeals for the 𝔉ederal 𝕮ircuit

---

**ARTHREX, INC.,**
*Appellant*

**v.**

**SMITH & NEPHEW, INC., ARTHROCARE CORP.,**
*Appellees*

**UNITED STATES,**
*Intervenor*

---

2018-2140

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2017-00275.

---

Decided: May 27, 2022

---

ANTHONY P. CHO, Carlson, Gaskey & Olds, PC, Birmingham, MI, argued for appellant. Also represented by DAVID LOUIS ATALLAH, JESSICA E. FLEETHAM, DAVID J. GASKEY. Also argued by ROBERT KRY, MoloLamken LLP, Washington, DC. Also represented by JEFFREY A. LAMKEN; JORDAN RICE, Chicago, IL; TREVOR ARNOLD, JOHN W. SCHMIEDING, Arthrex, Inc., Naples, FL.

CHARLES T. STEENBURG, Wolf, Greenfield & Sacks,

P.C., Boston, MA, argued for appellees.  Also represented by RICHARD GIUNTA, TURHAN SARWAR, NATHAN R. SPEED; MICHAEL N. RADER, New York, NY; MARK J. GORMAN, Smith & Nephew, Inc., Cordova, TN.

JOSHUA MARC SALZMAN, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for intervenor.  Also represented by BRIAN M. BOYNTON, COURTNEY DIXON, SCOTT R. MCINTOSH; SARAH E. CRAVEN, DANIEL KAZHDAN, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED, MOLLY R. SILFEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

————————————————

Before MOORE, *Chief Judge*, REYNA and CHEN, *Circuit Judges*.

MOORE, *Chief Judge*.

Arthrex, Inc. appeals a Patent Trial and Appeal Board final written decision finding claims 1, 4, 8, 10–12, 16, 18, and 25–28 of U.S. Patent No. 9,179,907 unpatentable as anticipated.  It also challenges a decision by the Commissioner for Patents denying Arthrex's request for the Director of the Patent and Trademark Office (PTO) to review the Board's decision and grant rehearing.  We affirm.

## BACKGROUND

In 2015, Arthrex sued Smith & Nephew, Inc. and ArthroCare Corp. (collectively, S&N) in the United States District Court for the Eastern District of Texas, alleging infringement of the '907 patent.  Shortly before trial, S&N petitioned the Board for *inter partes* review (IPR), arguing certain claims of the '907 patent were anticipated.  The Board instituted IPR and ultimately found that prior art anticipated claims 1, 4, 8, 10–12, 16, 18, and 25–28.  *Smith & Nephew, Inc. v. Arthrex, Inc.*, IPR2017-00275, 2018 WL 2084866, at *1 (P.T.A.B. May 2, 2018).

Arthrex appealed. It primarily challenged the Board's decision on the merits, but it also argued that the Board lacked constitutional authority to issue the agency's final decision. Arthrex reasoned that the Board could not issue final decisions because its Administrative Patent Judges (APJs) were not nominated by the President and confirmed by the Senate, as the Appointments Clause requires for principal officers. We agreed with Arthrex's constitutional challenge and held that the appropriate remedy was to (1) sever the statutory limitations on the removal of APJs and (2) remand for rehearing by a new panel of APJs. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1338, 1340 (Fed. Cir. 2019). We did not reach the merits of the Board's decision.

The Supreme Court vacated and remanded. *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021) (*Arthrex*). It agreed that because APJs are appointed by the Secretary of Commerce, rather than the President with the advice and consent of the Senate, they could not issue any "final decision binding the Executive Branch." *Id.* at 1985. The Court held, however, that the appropriate remedy was to (1) exempt the Director from 35 U.S.C. § 6(c), which precludes anyone but the Board from granting rehearing of a Board decision, and (2) "remand to the Acting Director for him to decide whether to rehear" the case. *Id.* at 1987.

On remand, Arthrex requested "rehearing by the Director." *Smith & Nephew, Inc. v. Arthrex, Inc.*, IPR2017-00275, Paper 39 at 1 (P.T.A.B. Aug. 27, 2021). The office of the Director was, however, vacant. As was the office of Deputy Director, which is "vested with the authority to act in the capacity of the Director in the event of [his] absence or incapacity." 35 U.S.C. § 3(b)(1). The responsibility of addressing Arthrex's request thus fell to the Commissioner under a standing directive known as Agency Organization Order 45-1. That order states, "If both the [Director] and the Deputy [Director] positions are vacant, the Commissioner for Patents . . . will perform the non-exclusive

functions and duties of the [Director]."[1]   U.S. Patent & Trademark Off., U.S. Dep't of Commerce, Agency Organization Order 45-1, at II.D (Nov. 7, 2016) (AOO 45-1).  The Commissioner then denied rehearing and ordered that the Board's decision "is the final decision of the agency."  *Smith & Nephew, Inc. v. Arthrex, Inc.*, IPR2017-00275, Paper 40 at 2 (P.T.A.B. Oct. 15, 2021).

Arthrex appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

I

We first address Arthrex's challenge to the Commissioner's order denying rehearing.  Arthrex argues it "never got the remedy the Supreme Court ordered" because "[n]o presidentially appointed, Senate-confirmed principal officer decided Arthrex's petition" for rehearing.  Appellant's Supp. Br. 1.  Specifically, it argues the Commissioner's exercise of the Director's authority to decide rehearing petitions violated (1) the Appointments Clause, U.S. Const., art. II, § 2, cl. 2; (2) the Federal Vacancies Reform Act (FVRA), 5 U.S.C. § 3345 *et seq.*; and (3) the Constitution's separation of powers, U.S. Const., art. II, § 3.  We do not agree.

A

The Appointments Clause requires all "Officers of the United States" to be appointed by the President with the advice and consent of the Senate.  U.S. Const., art. II, § 2,

---

[1]   The order refers to the Director and Deputy Director by their alternate titles of "Under Secretary of Commerce for Intellectual Property" and "Deputy Under Secretary of Commerce for Intellectual Property," respectively.  For clarity, we use the titles of Director and Deputy Director.

cl. 2. For "inferior Officers," however, the Appointments Clause authorizes Congress to dispense with joint appointment and vest appointment power "in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* Congress did just that with the Commissioner for Patents, empowering the Secretary of Commerce to unilaterally appoint him. 35 U.S.C. § 3(b)(2)(A).

Because the Commissioner for Patents is not a Presidentially appointed, Senate-confirmed (PAS) officer, he ordinarily may not "issue a final decision binding the Executive Branch." *Arthrex*, 141 S. Ct. at 1985. Arthrex argues the Commissioner violated this principle when he denied Arthrex's rehearing request and stamped the Board's decision as "the final decision of the agency." *Smith & Nephew*, IPR2017-00275, Paper 40 at 2.

1

Although an inferior officer generally cannot issue a final agency decision, he may perform the functions and duties of an absent PAS officer on a temporary, acting basis. *United States v. Eaton* is instructive. 169 U.S. 331 (1898). After falling ill, the consul general to Siam, Sempronius Boyd, a PAS officer, unilaterally appointed Lewis Eaton, then a missionary, to the position of vice consul general. *Id.* at 331–32. Mr. Boyd then took a leave of absence, returning to his home in Missouri, where he later died. *Id.* at 332–33. In the period between Mr. Boyd's departure and his replacement's arrival, Mr. Eaton was required by law to "temporarily . . . fill the place[ ] of consul[ ] general," which he did. *Id.* at 336 (quoting Revised Statutes § 1674). The government, however, refused to pay Mr. Eaton for his services. It argued that Congress violated the Appointments Clause by authorizing the President to promulgate the consular regulations Mr. Boyd invoked to appoint Mr. Eaton. *See id.* at 343.

The Supreme Court rejected that argument. It held that an inferior officer "charged with the performance of

the duty of [a] superior for a limited time, and under special and temporary conditions," need not be Presidentially appointed and Senate confirmed. *Id.* Otherwise, the Court reasoned, "every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer" would be void, "and the discharge of administrative duties would be seriously hindered." *Id.* *Eaton* thus teaches that the Appointments Clause allows an inferior officer to temporarily wield the powers of an absent PAS officer.

The Supreme Court reaffirmed *Eaton*'s holding in this very case. It cited *Eaton* with approval as "holding that an inferior officer can perform functions of [a] principal office on [an] acting basis." *Arthrex*, 141 S. Ct. at 1985 (citing *Eaton*, 169 U.S. at 343). And based on that understanding of *Eaton*, it distinguished the Board's APJs from early patent arbitrators and examiners, explaining that "they exercised their limited power under 'special and temporary conditions.'" *Id.* (quoting *Eaton*, 169 U.S. at 343). Consistent with *Eaton,* an inferior officer can temporarily perform functions of a principal officer on an acting basis.

*Eaton* is, moreover, consistent with the FVRA. Under the FVRA, if a PAS officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," an inferior officer may fill in for him "temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1), (3). The Supreme Court alluded to this interim appointment mechanism when it ordered "a remand to the *Acting* Director for him to decide whether to rehear [S&N's] petition." *Arthrex*, 141 S. Ct. at 1987 (emphasis added). This further supports that an inferior officer may temporarily perform an absent PAS officer's duties without violating the Appointments Clause.

## 2

This case is indistinguishable from *Eaton*. Like Mr. Eaton, the Commissioner was merely performing the functions and duties of the Director in the limited period

between the former Director's departure and the current Director's arrival. *See Eaton*, 169 U.S. at 332–33. And he did so under a previous Director's standing directive, *see* AOO 45-1, at II.D ("If both the [Director] and the Deputy [Director] positions are vacant, the Commissioner for Patents . . . will perform the non-exclusive functions and duties of the [Director]."), which is akin to how Mr. Boyd "called to" Mr. Eaton "and asked him to take charge of the consulate and its archives." *Eaton*, 169 U.S. at 331–32. *Eaton* therefore counsels that the Commissioner's actions did not violate the Appointments Clause.

Arthrex argues that "only a [PAS] officer may issue final agency decisions that are not subject to review by any superior officer." Appellant's Supp. Br. 12. Adopting this argument, however, would require us to ignore the Supreme Court's prior decision in this case directing "a remand to the *Acting* Director for him to decide whether to rehear [S&N's] petition." *Arthrex*, 141 S. Ct. at 1987 (emphasis added); *see also, e.g.*, 5 U.S.C. § 3345(a)(3) (providing that an Acting Director may be an inferior officer within the PTO). It would also require us to hold the FVRA facially unconstitutional insofar as it permits inferior officers to perform a PAS officer's duties in an acting capacity. *See* 5 U.S.C. § 3345(a)(1), (3). Lastly, this argument directly conflicts with *Eaton*'s clear holding that an inferior officer may temporarily exercise a PAS officer's powers in his absence. *See* 169 U.S. at 343. We therefore reject the argument that only a PAS officer may issue final agency decisions in all circumstances.

We also reject Arthrex's argument that *Eaton* is inapposite because it addressed only "situations where *Congress* creates a mechanism for temporary appointments that permits the *President* to select the appointee." Appellant's Supp. Reply Br. 2. Arthrex misapprehends the facts of *Eaton* and of this case. The President never selected Mr. Eaton as vice consul general; Mr. Boyd did. *Eaton*, 169 U.S. at 331–32. Nor did Congress authorize the President

to appoint Mr. Eaton; rather, it authorized him to *promulgate regulations* providing for such appointments. *See id.* at 336 ("The president is authorized to . . . provide for the appointment of vice consuls . . . under such regulations as he shall deem proper . . . ." (quoting Revised Statutes § 1695)). Regardless, here, Congress *did* authorize the President to select the Commissioner to temporarily perform the Director's duties. That is because the Patent Act broadly empowers the President, acting through the Director, to delegate the Director's duties as he sees fit. *See* 35 U.S.C. § 3(b)(3)(B) ("The Director shall . . . delegate to [officers and employees] such of the powers vested in the Office as the Director may determine."); Patent and Trademark Office Efficiency Act, Pub. L. No. 106-113, § 4745, 113 Stat. 1501, 1501A-587 (1999) (codified at 35 U.S.C. § 1 note) (The Director "may delegate any of [his] functions . . . to such officers and employees . . . as [he] may designate."). This basis for distinguishing *Eaton* therefore lacks merit.

Nor are we persuaded by Arthrex's argument that this case is different from *Eaton* because the Commissioner was supposedly not performing the Director's duties "for a limited time." Appellant's Supp. Br. 16. The Commissioner's time in that role was, from the outset, limited to the period in which the Director and Deputy Director offices remained vacant. *See* AOO 45-1, at II.D. Arthrex concedes this. Appellant's Supp. Br. 16 ("Under the agency's delegation, Commissioner Hirshfeld serves indefinitely *until a successor is appointed* . . . ." (emphasis added)). It is immaterial that AOO 45-1 did not specify exactly how long the Commissioner's tenure would be, for neither did the temporary appointment in *Eaton*. *See* 169 U.S. at 331–32 (noting appointment was for period "during [Sempronius Boyd's] absence, and until the then expected arrival from the United States of Robert M. Boyd, whom Sempronius Boyd desired should act as consul general" but who had not yet qualified). Moreover, the Commissioner denied Arthrex's

rehearing request on his 268th day performing the Director's duties, which is less than the 309 days the Supreme Court deemed acceptable in *Eaton*. *See id.* at 333–34. Finally, the Commissioner's stint as the Director's stand-in was always limited in that the President could have replaced him with an Acting Director at any time. *See* 5 U.S.C. § 3345(a)(2), (3). In light of this combination of facts, the Commissioner was performing the Director's duties "for a limited time, and under special and temporary conditions." *Eaton*, 169 U.S. at 343.

In sum, Arthrex's Appointments Clause challenge runs headlong into *Eaton* and the Supreme Court's prior decision in this case. We therefore conclude that the Commissioner's exercise of the Director's authority while that office was vacant did not violate the Appointments Clause.

## B

Arthrex next argues the FVRA precluded the Commissioner from ruling on Arthrex's rehearing request and deprives the Commissioner's decision of any "force or effect." Because the FVRA applies only to non-delegable duties, and because deciding rehearing requests is a delegable duty, we hold that the FVRA does not apply here.

## 1

When a PAS officer dies, resigns, or is otherwise unable, the FVRA dictates who may temporarily perform his "functions and duties" in an acting capacity. 5 U.S.C. § 3345(a); *see also* 5 U.S.C. § 3348(d)(1)–(2) ("An action taken by any person who is not [appointed pursuant to the FVRA], in the performance *of any function or duty* of a vacant office to which [the FVRA applies,] shall have no force or effect" and "may not be ratified." (emphasis added)). Critically, the statute defines that term narrowly:

[T]he term "function or duty" means any function or duty of the applicable office that—

(A)

> (i) is established by statute; and
>
> (ii) is *required by statute to be performed by the applicable officer (and only that officer)*; or

(B)

> (i)
>
>> (I) is established by regulation; and
>>
>> (II) is *required by such regulation to be performed by the applicable officer (and only that officer)*; and
>
> (ii) includes a function or duty to which clause (i)(I) and (II) applies, and the applicable regulation is in effect at any time during the 180-day period preceding the date on which the vacancy occurs.

5 U.S.C. § 3348(a)(2) (emphases added).

This statutory language is unambiguous: the FVRA applies only to functions and duties that a PAS officer alone is permitted by statute or regulation to perform. It does not apply to delegable functions and duties. Other circuits agree. *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009) (holding the FVRA did not prohibit an inferior officer from performing a function of a PAS officer who had resigned because the agency's regulations permitted the PAS officer to delegate that function); *Stand*

*Up for Cal.! v. U.S. Dep't of Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021) (observing FVRA applies to "exclusive duties").[2]

The legislative history, as is often the case, demonstrates the competing considerations that went into the statute's adoption.  On one hand, the FVRA's sponsors expressed a desire for the law to apply in nearly all circumstances.  One sponsor "hope[d] that the Senate would make the Vacancies Act 'so tight, so air-tight, that no department can find a crack or crevice anywhere through which to creep.'" S. Rep. No. 105-250, at 9 (1998) (quoting statement of Senator Robert Byrd).  Likewise, another sponsor said the law was meant to "cover all situations when the officer cannot perform his duties."  144 Cong. Rec. 27,496 (1998) (statement of Senator Fred Thompson).

The Senate Committee on Governmental Affairs stated that "[t]he purpose of [the FVRA] is to create a clear and exclusive process to govern the performance of duties" in an acting capacity.  S. Rep. No. 105-250, at 1.  It also said, "The bill applies to all vacancies in Senate-confirmed positions in executive agencies with [only] a few express exceptions." *Id.* at 2; *see also id.* at 15–17 (describing exceptions). And it repeatedly rejected a narrow interpretation that agencies vested with general delegation authority were exempt from the FVRA.  *See, e.g., id.* at 3–4.

On the other hand, commenting on the specific statutory provision at issue here, 5 U.S.C. § 3348(a)(2), the Committee stated:

The bill defines "function or duty" of the office as those functions or duties that (1) are established by

---

[2]    We acknowledge that these decisions are not binding on us and that *Stand Up*'s observation may be dictum. *See* 994 F.3d at 622 n.2 ("Appellants have not raised their FVRA claims on appeal . . . .").  Nevertheless, these cases support our interpretation.

> statute and are *required to be performed only by the applicable officer*; (2) are established by regulation and are *required to be performed only by the applicable officer*; [or] (3) were established by regulation and were *required to be performed only by the applicable officer* at any time in the 180 days preceding the vacancy . . . .

S. Rep. No. 105-250, at 17–18 (emphases added). The Committee elaborated, "The functions or duties of the office that can be performed only by the head of the executive agency are therefore defined as the *non-delegable* functions or duties of the officer . . . ." *Id.* at 18 (emphasis added). And it clarified that "[d]elegable functions of the office could still be performed by other officers or employees." *Id.* It appears this was a compromise to address concerns that a broader definition could "cause an unintended shutdown of the Federal agency within which the vacancy exists due to administrative paralysis." *Id.* at 30–31. These competing narratives in the legislative history cannot alter the plain language of the statute that was adopted, which provides that the FVRA applies only to non-delegable functions and duties. 5 U.S.C. § 3348(a)(2).

Arthrex is correct that this reading of § 3348(a)(2) renders the FVRA's scope "vanishingly small." Oral Arg. at 4:58–5:13.[3] The government readily admits that only "a very small subset of duties" are non-delegable. *Id.* at 37:21–37. The Department of Justice agrees: "Most, and in many cases all, the responsibilities performed by a PAS officer will not be exclusive." Guidance on Application of Fed. Vacancies Reform Act of 1998, 23 Op. O.L.C. 60, 72 (1999). Pertinent here, the government contends that the FVRA imposes no constraints whatsoever on the PTO because all the Director's duties are delegable. Oral Arg. at

----

[3]    *Available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=18-2140_03302022.mp3.

36:44–53 (Q: "Are there any functions or duties that a Director at the PTO has that in your view are not delegable?" A: "No, I don't believe there are any."); *id.* at 38:38–57 ("When you ask the question whether . . . the FVRA imposes constraints as opposed to an affirmative grant of authority to President Biden as it pertains to the Patent and Trademark Office, I'd say no . . . ."). We find it disquieting that the government views the FVRA as impacting such a "very small subset of duties" and not impacting the PTO at all.

That does not, however, justify departing from the plain language of the statute. *N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 14 (1986) ("[I]f one must ignore the plain language of a statute to avoid a possibly anomalous result, the short answer is that Congress did not write the statute that way." (cleaned up)). Moreover, Congress chose the limiting language of § 3348(a)(2) knowing full well that "many [PAS officers] lack any meaningful statutory duties." S. Rep. No. 105-250, at 18. We can neither rewrite the statute nor supplant Congress' judgment.

Furthermore, adopting Arthrex's position would have significant consequences. Arthrex does not dispute S&N's assertion that, in the last decade alone, the PTO has issued more than 668,000 patents signed by an inferior officer filling in for the Director. Construing the FVRA to apply to delegable duties would call the validity of those patents into question. It would also cast doubt on all the IPR decisions the PTO issued during the Commissioner's tenure performing the Director's delegable functions. *See* 5 U.S.C. § 3348(d)(1) ("An action taken by any person who is not acting under section 3345, 3346, or 3347 . . . shall have no force or effect.").

The impacts of such a decision would, moreover, reverberate far beyond the PTO. The universe of delegable PAS-officer duties is expansive, potentially encompassing every Executive agency. Oral Arg. at 41:03–13 (noting there are

more than 1,000 PAS offices across the government); *id.* at 4:58–5:13 ("In the real world, every agency has general delegation authority, and it applies to the vast and overwhelming majority of the agency's functions."); Guidance on Application of Fed. Vacancies Reform Act of 1998, 23 Op. O.L.C. at 72 ("Most, and in many cases all, the responsibilities performed by a PAS officer will not be exclusive."). Indeed, when Congress "delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent." *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1031 (Fed. Cir. 2016) (quoting *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004)); *see also Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1190–91 (10th Cir. 2014) ("Our sibling circuits that have spoken on this issue are unanimous in permitting subdelegations to subordinates, even where the enabling statute is silent, so long as the enabling statute and its legislative history do not indicate a prohibition on subdelegation." (collecting cases)). As between the exceedingly broad scope that Arthrex proposes and the exceedingly narrow scope that the plain text of § 3348(a)(2) demands, we must choose the latter.

Arthrex argues that our interpretation "read[s] § 3347(b) out of the statute entirely." Oral Arg. at 11:02–14. We do not agree. Section 3347(b) merely provides that a statute granting the head of an agency "general authority . . . to delegate [his] duties" does not exempt the agency from the FVRA. Construing the FVRA to apply only to nondelegable duties does not render this provision superfluous. If, for example, Congress grants an agency head general delegation authority but specifies that certain duties are non-delegable, § 3347(b) makes clear that the FVRA still applies to those non-delegable duties. And if no statute or regulation precludes delegation of a specific duty, the FVRA would not apply for *that* reason, not because of a statutory grant of general delegation authority. We

therefore reject Arthrex's argument that our reading of § 3348(a)(2) conflicts with § 3347(b).

The plain language of the statute limits the scope of the FVRA to non-delegable functions and duties. The FVRA does not, therefore, restrict who may perform a PAS officer's delegable duties when he is absent.

2

Applying the statute to this case, we must determine whether reviewing rehearing requests is a delegable duty of the Director or a duty that the Director, and only the Director, must perform. In *Arthrex,* the Supreme Court held that the Director (or Acting Director) must have the ability to rehear decisions of the Board. 141 S. Ct. at 1987 ("If the Director were to have the 'authority to take control' of a PTAB proceeding, APJs would properly function as inferior officers." (quoting *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 354 (1931))). It did not hold that the Director must rehear every Board decision, nor did it require the Director to issue a decision in response to every rehearing request. "To be clear, the Director need not review every decision of the PTAB. What matters is that the Director have the discretion to review decisions rendered by APJs." *Id.* at 1988. We conclude that under the Patent Act this discretion includes the discretion to delegate review of rehearing requests.

The Patent Act bestows upon the Director a general power to delegate "such of the powers vested in the [PTO] as the Director may determine." 35 U.S.C. § 3(b)(3)(B). There is nothing in the Patent Act indicating that the Director may not delegate this rehearing request review function. Arthrex identifies no statute, regulation, or other law that limits the Director's delegable duties or suggests that rehearing requests are not delegable.

Arthrex cites 35 U.S.C. § 6(c), which provides that "[o]nly the Patent Trial and Appeal Board may grant

rehearings." On its face, the statute does not even permit the Director to grant rehearing, much less assign that authority exclusively to him. The Supreme Court, however, held that § 6(c) "cannot constitutionally be enforced to the extent that its requirements prevent the Director from reviewing final decisions rendered by APJs." *Arthrex*, 141 S. Ct. at 1987. "The Director accordingly may review final [Board] decisions" notwithstanding § 6(c). *Id.*[4] The Supreme Court held that the Director *may* review final Board decisions. That is all the Appointments Clause requires, that the Director have the option to review, if she so chooses, a final Board decision. That the Appointments Clause requires that a PAS have review authority does not mean that a principal officer, once bestowed with such authority, cannot delegate it to other agency officers.

Given the language of the statute, the Director's general grant of delegation authority, and the absence of any language suggesting that rehearing requests must be reviewed by the Director and only the Director, we conclude that, for purposes of the FVRA, the duty to decide rehearing requests is delegable. Arthrex argues that the Director's general delegation authority cannot alone satisfy the FVRA. Appellant's Supp. Reply Br. 7–8. According to Arthrex, Congress enacted § 3347(b) of the FVRA specifically to foreclose this argument. *Id.* (citing, *e.g.*, S. Rep. No. 105-250, at 17). There are two problems with Arthrex's

---

[4]    Arthrex argues that after the Supreme Court's decision, § 6(c) now "permits the Director—and only the Director—to exercise a unilateral power to review Board decisions." Appellant's Supp. Br. 22. But § 6(c) contains no such limitation. The statute permits the Board to grant rehearing, and the Supreme Court's *Arthrex* decision concluded that the Director may also grant rehearing. Nothing in § 6(c) permits the Director (and only the Director) to rule on rehearing requests.

argument. First, § 3347(b) does not actually apply to the Director at all. It provides that the general delegation authority of "the head of an *Executive agency*" is not a basis to evade the FVRA. (Emphasis added). Because the PTO is a subagency of the Department of Commerce, *see* 35 U.S.C. § 1(a), it is not an "Executive agency" under the FVRA. *See* 5 U.S.C. § 105 ("For the purpose of this title, 'Executive agency' means an Executive department, a Government corporation, and an independent establishment."); 5 U.S.C. § 101 (listing the Department of Commerce as an Executive department). Second, even when there exists general delegation authority, Congress can still exempt specific duties or functions and thereby require those to be performed by the PAS officer. We are not, therefore, relying upon the Director's general delegation authority alone in holding that the FVRA does not apply here. Rather, our decision rests on the absence of any statute or regulation or law permitting only the Director to decide rehearing requests.

We hold that the Commissioner's order denying Arthrex's rehearing request on the Director's behalf did not violate the FVRA. The FVRA does not restrict who may perform the delegable functions and duties of an absent PAS officer. And the Director's authority to decide requests for rehearing Board decisions is delegable.[5]

C

Arthrex next contends that by exercising the Director's authority, the Commissioner violated the Constitution's separation of powers. We do not agree.

---

[5]    The government argues that there are no non-delegable duties of the Director. This decision is limited to a determination that the Director's authority to review rehearing requests is a delegable duty. As that is the only power at issue in this case, we go no broader.

The Constitution requires the President to "take Care that the Laws be faithfully executed." U.S. Const., art. II, § 3. "That power, in turn, generally includes the ability to remove executive officials." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020). Without removal power, it would be "impossible for the President . . . to take care that the laws be faithfully executed." *Id.* at 2198 (alteration in original) (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)). Except in limited circumstances not pertinent here, Congress cannot restrict the President's removal power. *See id.* at 2191–92. So, for example, a statute that prohibits the President from removing a PAS officer except for "inefficiency, neglect of duty, or malfeasance in office" is an unconstitutional encroachment upon Executive power. *Id.* at 2192–93 (quoting 12 U.S.C. § 5491(c)(3)).

Arthrex argues that because the Commissioner is removable only for "misconduct or nonsatisfactory performance," 35 U.S.C. § 3(b)(2)(C), the Constitution's separation of powers precludes him from performing the Director's duties. This argument has no merit. Although the President must have cause to remove the Commissioner from *that* position, he needs no cause to remove the Commissioner from his role as the Director's temporary stand-in. Arthrex concedes that the FVRA provides a mechanism for the President to name an Acting Director "with the stroke of a pen" and that "there is simply no burden associated with doing that." Oral Arg. at 22:31–23:02; *see* 5 U.S.C. § 3345(a)(2), (3) (authorizing the President to simply "direct" another PAS officer or a senior employee of the agency "to perform the functions and duties of the vacant office temporarily in an acting capacity"). Because the President has unfettered power under the FVRA to strip the Commissioner of his temporary PAS-officer authority, the Commissioner's exercise of that authority does not violate the Constitution's separation of powers.

## II

Turning to the merits, Arthrex challenges the Board's finding that prior art anticipated claims 1, 4, 8, 10–12, 16, 18, and 25–28 of the '907 patent. It also contends the Board lacked statutory authority to determine the validity of Arthrex's priority claim during IPR. Because substantial evidence supports its anticipation finding, and because it has the authority to resolve priority issues during IPR, we affirm the Board's decision.

## A

The '907 patent discloses a surgical device for attaching soft tissue to bone without requiring the surgeon to tie suture knots to secure the suture or tissue. *See* '907 patent at 1:43–48. The device comprises an "eyelet" through which the surgeon threads the suture. *See id.* at 1:51–53. The eyelet may be a flexible "suture loop 70," as shown below:



*Fig-15*

*Id.* at 5:51–59; Fig. 15. Alternatively, the eyelet may be a rigid "implant 150 . . . formed of a transparent polymer material":



*Id.* at 7:4–10; Fig. 21.

Claim 1 is representative. Appellant's Br. 13. Pertinent to this appeal, it recites "an eyelet" generically, thereby encompassing both of the above embodiments:

> 1. A suture securing assembly, comprising:
>
>> an inserter including a distal end, a proximal end, and a longitudinal axis between the distal end and the proximal end;
>>
>> a first member including *an eyelet* oriented to thread suture across the longitudinal axis, the first member being situated near the distal end of the inserter, the first member being configured to be placed in bone; and
>>
>> a second member situated near the distal end of the inserter, the second member being moveable by a portion of the inserter relative to the first member in a distal direction toward the eyelet into a suture securing position where the second member locks suture in place.

'907 patent at claim 1 (emphasis added).

ARTHREX, INC. v. SMITH & NEPHEW, INC.                    21

The Board found claim 1 anticipated by U.S. Patent Publication No. 2002/0013608 (ElAttrache). *Smith & Nephew, Inc. v. Arthrex, Inc.*, IPR2017-00275, 2018 WL 2084866, at *4–5 (P.T.A.B. May 2, 2018) (*Board Decision*).[6] ElAttrache is the 2002 publication of an earlier Arthrex patent application, Application No. 09/886,280. ElAttrache at [21]. It discloses the same flexible eyelet embodiment as the '907 patent:



*FIG. 15*

*Id.* at Fig. 15.

Before the Board, Arthrex agreed that ElAttrache would anticipate the challenged claims if it were prior art but argued that ElAttrache is not, in fact, prior art. *Board Decision* at *1. It reasoned that the '907 patent claims

---

[6] The Board also found claim 1 anticipated by International Patent Publication No. WO 02/21999 A2 (Martinek). *Id.* at *5–6. Because we affirm the Board's decision based on ElAttrache, we need not address Martinek.

priority to the '280 application through a series of intervening continuation, continuation-in-part, and divisional applications. Arthrex contended the effective filing date of the challenged claims is the filing date of the '280 application, which was before ElAttrache's publication date.

The Board rejected that argument. It found that one of the intervening applications, Application No. 10/405,707, lacks any written description of the flexible eyelet embodiment encompassed by the generic eyelet claimed in the '907 patent and, thus, cuts off the '907 patent's priority claim. *Board Decision* at *7. The Board reasoned that although the '707 application incorporates the '280 application by reference, *id.* at *11–12, it criticizes the '280 application's "flexible loop configuration" and purports to "overcome [its] disadvantages" using a "fixed aperture," *see id.* at *8–9 (quoting '707 application, ¶¶ 5–7). Because of that criticism, the Board found that a skilled artisan would have understood the '707 application to do away with flexible eyelets and require rigid eyelets. *Id.* at *9–11. Accordingly, the Board concluded that the effective filing date of the challenged claims is the filing date of the application that issued as the '907 patent, well after ElAttrache's publication date. *Id.* at *4.

B

"[T]o gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997) (citing *In re Hogan*, 559 F.2d 595, 609 (CCPA 1977)). That means each application in the chain must "reasonably convey[ ] to those skilled in the art that the inventor had possession of the [later-claimed] subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (first citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555,

1563 (Fed. Cir. 1991); and then citing *In re Kaslow*, 707 F.2d 1366, 1375 (Fed. Cir. 1983)). "Sufficiency of written description is a question of fact, reviewed for substantial evidence." *Gen. Hosp. Corp. v. Sienna Biopharms., Inc.*, 888 F.3d 1368, 1371 (Fed. Cir. 2018) (citing *Inphi Corp. v. Netlist, Inc.*, 805 F.3d 1350, 1354 (Fed. Cir. 2015)).

Substantial evidence supports the Board's finding that the '707 application lacks written description of flexible eyelets and, thus, the generic eyelet claim limitation. The '707 application's only mention of flexible eyelets is in the background section. There, it credits the '280 application's overall technique as an improvement but strongly criticizes its use of a flexible eyelet because it "impedes sliding of the suture":

> Although the ['280 application's] technique provides an improved method of graft fixation to bone, the flexible loop configuration at the end of the driver disadvantageously *impedes sliding of the suture or graft* which is fed through the suture loop. In addition, because the cannulated driver of [the '280 application] is provided with a flexible loop at its distal end, *placement of the suture or graft at the bottom of the blind hole or socket and the cortical bone must be approximated*, thus sometimes necessitating additional removal, tapping and insertion steps to ensure full insertion of the plug or screw into the blind hole or socket. This, in turn, may abrade the adjacent tissue and/or damage the bone or cartilage.

'707 application, ¶ 5 (emphases added). Aside from this critique, the '707 application is completely silent about flexible eyelets.

And to "overcome the disadvantages" of flexible eyelets, the '707 application exclusively discloses an eyelet with a "fixed aperture" rather than a flexible loop. *Id.* ¶ 7. Unlike flexible eyelets, this allows the suture to "freely slide

through the aperture," which in turn "allow[s] precise advancement and guiding of the plug or screw into the blind hole or socket." *Id.* ¶ 29. The application stresses the importance of this feature, noting that the invention covers "an aperture of any configuration of any geometrical shape, *as long as it . . . allows the captured suture to freely slide within the aperture.*" *Id.* ¶ 33 (emphasis added).

Based on these disclosures, S&N's expert testified that a skilled artisan would have understood the '707 application to require a rigid eyelet. He explained that because the '707 application mentions a flexible eyelet "only for purposes of criticizing it and emphasizing the need for an alternative approach that allows suture to slide freely," a skilled artisan would have understood that free sliding is "essential to the purported invention" and that flexible eyelets are "contrary to the invention's stated purpose." J.A. 2324, § 125; J.A. 2323, § 123. This testimony and the disclosures of the '707 application are substantial evidence upon which the Board could find that the '707 application lacks written description of generic eyelets encompassing flexible eyelets, as claimed by the '907 patent. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (holding substantial evidence did not support finding that parent application provided written description of later-claimed genus encompassing any shape where it "tout[ed] the advantages of [a] conical shape," mentioned other shapes only in reciting the prior art, and "specifically distinguishe[d] the prior art as inferior"); *see also Bilstad v. Wakalopulos*, 386 F.3d 1116, 1125 (Fed. Cir. 2004) (explaining that *Tronzo* is an "exception[ ] to the general rule that disclosure of a species provides sufficient written description support for a later filed claim directed to the genus").

Arthrex argues the Board failed to give effect to the '707 application's incorporation of the entire '280 application by reference. According to Arthrex, this broad incorporation by reference compels a finding that the '707

application provides written description support for flexible eyelets because there is no dispute that the '280 application discloses one. The Board, however, considered the '707 application's incorporation by reference and found it did not outweigh the evidence that the '707 application relies entirely on rigid eyelets. *Board Decision* at *11–12. Because the '707 application denigrates flexible eyelets and exclusively describes alternatives to overcome their disadvantages, we cannot say the Board's finding was unreasonable.

Arthrex further argues that the '707 application adequately describes generic eyelets because it discloses "the function of threading suture," which is "tied to" flexible eyelets. Appellant's Br. 49. To be sure, the disclosure of a function may provide written description of a known structure for performing that function if the function and structure are "sufficiently correlated" to one another. *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1332 (Fed. Cir. 2003). If, however, the specification derides a particular structure and seeks to replace it with alternatives that ostensibly perform its function better, a reasonable person could find that the specification lacks written description for that structure. The Board's finding that the '707 application does not adequately describe generic eyelets that encompass flexible eyelets is supported by substantial evidence, as is its determination that ElAttrache is anticipatory prior art.

## C

Lastly, there is no merit to Arthrex's argument that the Board lacked statutory authority to decide whether the '707 application meets the written description

requirement.[7] Arthrex argues that because the scope of an IPR is limited to "ground[s] that could be raised under section 102 or 103," 35 U.S.C. § 311(b), the Board could not address the written description requirement of § 112. Section 311(b), however, merely dictates the grounds on which an IPR petition may be based, not the issues that the Board may consider to resolve those grounds. S&N complied with § 311(b) by asserting invalidity grounds under § 102. And because Arthrex argued that ElAttrache is not prior art by claiming priority to the '280 application, the Board needed to determine whether the '707 application satisfied the written description requirement. *See In re NTP, Inc.*, 654 F.3d 1268, 1279 (Fed. Cir. 2011) (holding "priority can be considered and determined during reexamination proceedings," which are governed by similar statutory language).[8] The Board therefore did not exceed its authority.

---

[7]    Although the government contends Arthrex forfeited this argument, we exercise our discretion to address it. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

[8]    *Compare* 35 U.S.C. §§ 301, 302 ("Any person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art [consisting of patents or printed publications bearing on the patentability of that claim].") *with* 35 U.S.C. § 311(b) ("A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.").

CONCLUSION

Arthrex does not persuade us that the Commissioner violated the Appointments Clause, the FVRA, or the Constitution's separation of powers in denying Arthrex's rehearing request. Nor does it identify reversible error in the Board's decision that ElAttrache anticipated the challenged claims of the '907 patent. Accordingly, we affirm.

**AFFIRMED**

COSTS

The parties shall bear their own costs.